The LaVAY CORPORATION, et al., Plaintiffs,

v.

DOMINION FEDERAL SAVINGS & LOAN ASSOCIATION, et al., Defendants.

Civ. A. No. 86-0013-A.

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 25, 1986.

---

Carlton M. Green, Richard C. Daniels, Hyattsville, Va., H. Carter Land, III, F. Andrew Carroll, Alexandria, Va., for plaintiffs.

Leslie A. Nicholson, Phillip J. Harvey, Washington, D.C., Robert C. Dunn, Alexandria, Va., Waldemar J. Pflepsen, Washington, D.C., for defendants.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This matter is before the court on defendant Dominion Federal Savings & Loan Association's ("Dominion's") Motion for Judgment Notwithstanding the Verdict or for a New Trial, pursuant to Rules 50 and 59, Fed.R.Civ.P.

For the reasons set forth, a Judgment Notwithstanding the Verdict is granted to Dominion as to the constructive fraud verdict. Dominion's Motion for Judgment N.O.V. or for a New Trial as to breach of fiduciary duty is denied, but a remittitur of the punitive damage amount is granted.

### I

### *Background*

Plaintiff, The LaVay Corporation ("LaVay"), instituted suit in September, 1985, against Dominion and some of its officers and directors to recover damages for breach of contract, fraud, negligent misrepresentation, breach of fiduciary duty, and tortious interference with contractual relations. At the conclusion of plaintiffs' evidence, the court dismissed the individual defendants and granted Dominion's Motion for a Directed Verdict as to the tortious interference claim. On July 7, 1986, the jury returned a verdict in favor of plaintiff LaVay, on the claim of constructive fraud, awarding $80,000, and in favor of LaVay on the breach of fiduciary duty count, awarding $1,000 compensatory damages and $750,000 punitive damages.[1] The jury

---

1. Initially, the jury returned a verdict for LaVay on the breach of fiduciary duty claim in the

found for Dominion on the breach of contract and fraud counts. On July 17, 1986, Dominion filed the Motion for Judgment N.O.V. or for a New Trial on the constructive fraud and breach of fiduciary duty claims.

The trial evidence showed that in March, 1983, LaVay entered into a contract with Waterwood Homes Corporation to buy approximately 800 acres of Savannah Land in Florida. In the spring of 1983, LaVay and Dominion's officers and directors discussed a possible loan commitment by Dominion to fund development of LaVay's proposed Savannah Club project on the land. At the end of July or early August, 1983, LaVay entered into an oral partnership agreement with Dominion to develop the Savannah Club. Dominion officers, after viewing the land in August, 1983, represented to LaVay that the deal would be closed within seven to ten days.

In late August, 1983, Dominion gave LaVay its written commitment letter, which LaVay felt was a breach of the earlier oral agreement. On September 22, 1983, however, Dominion indicated it would increase the loan amount in the letter by $140,000. On that basis, LaVay relinquished a $50,000 down payment to Waterwood Homes Corporation.

On September 23, 1983, Dominion advised LaVay by letter that it was then disinclined to provide the additional $140,000 and gave LaVay an extension until September 26, 1983, to return the signed commitment letter. Later on September 23, 1983, Dominion advised LaVay the deal was dead due to unsatisfactory appraisal results.

In April, 1984, LaVay became aware of ongoing development of the Savannah Club. Gerard LaVay searched the Florida land records for the source of financing, and turned the matter over to his attorneys in April, 1984. As a result of the lost commitment letter, LaVay incurred $85,000 in damages.

amount of $750,000 punitive, but no compensatory damages. The court instructed the jury to

## II

### Discussion

In deciding a Motion for Judgment Notwithstanding the Verdict under Rule 50, the question to be resolved is whether there is evidence upon which a jury can properly find a verdict. *Ralston Purina Co. v. Edmunds*, 241 F.2d 164, 167 (4th Cir.1957), *cert. denied*, 353 U.S. 974, 77 S.Ct. 1059, 1 L.Ed.2d 1136 (1957). The court must view the evidence most favorably to the party against whom the motion is made and give that party the benefit of all reasonable inferences from the evidence. *Lynch v. Universal Life Church*, 775 F.2d 576, 580 (4th Cir.1985); *see also*, 9 Wright & Miller, *Federal Practice and Procedure*, § 2524 at 543–545 (1971). The court's role in ruling on a motion for a new trial under Rule 59 differs, however, from its role in ruling on a motion for judgment N.O.V.

The distinction between the court's function in each motion has been stated as follows:

> There is a significant difference between deciding a motion for judgment notwithstanding the verdict and deciding a motion for a new trial. The trial court is prohibited from assessing the credibility of witnesses and weighing the evidence when ruling on a motion for judgment notwithstanding the verdict.

In contrast, the trial court can weigh evidence and assess credibility in deciding whether to grant a new trial. *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 891–92 (4th Cir.1980). The court should exercise its discretion to grant a new trial 'whenever, in its judgment, this action is required in order to prevent injustice.' 11 Wright & Miller, *Federal Practice and Procedure*, § 2805 at 38 (1973). This includes ordering a new trial when the jury verdict is contrary to the weight of evidence.

redeliberate on the verdict, and they reached the $1,000 compensatory damage figure.

*Whalen v. The Roanoke County Board of Supv.*, 769 F.2d 221, 226 (4th Cir.1985).

With these general principles in mind, the court turns to the various issues raised by the jury verdict.

### A. *Constructive Fraud*

Dominion argues that the constructive fraud verdict should be set aside because the Virginia one-year statute of limitations bars this cause of action. LaVay would have the court instead apply the Maryland three year statute of limitations. If Virginia law applies, however, LaVay argues first, that the Virginia five year statute of limitations governs this action, and alternatively that, even if the court applies the one year statute of limitations, the suit is timely.

■ The first question is whether Maryland or Virginia law governs the application of the statute of limitations. This case was initially filed on September 13, 1985, in the United States District Court for the District of Maryland. On December 10, 1985, the United States District Court for the District of Maryland, by stipulation and order, transferred this case to the Eastern District of Virginia. The venue issue arises now because the United States District Court for the District of Maryland did not state the code section under which it was transferring this case. If the transfer was based on 28 U.S.C. § 1406(a) (improper venue) the law of Virginia should apply. If the action was transferred pursuant to 28 U.S.C. § 1404(a) (forum non conveniens), however, the law of Maryland may apply. *Linnell v. Sloan*, 636 F.2d 65, 66 (4th Cir. 1980) (choice of law rules of original forum apply when case transferred under 28 U.S.C. § 1404(a)).

In this case, the defendants moved in the District of Maryland to have the case dismissed, or in the alternative, to have the case transferred to the Eastern District of Virginia based on improper venue. The venue code section, 28 U.S.C. § 1391(b), provides that:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which in the claim arose, except as otherwise provided by law.

All four of the individual defendants resided in Virginia, and not Maryland, at the time suit was filed. The plaintiffs chose to include the individual defendants with claims under the Racketeer Influenced and Corrupt Organizations Act and tortious interference with contract. Additionally, trial evidence indicated that the claims and cause of action arose in Virginia. Even if Dominion transacted business in Maryland, venue was improper under § 1391(b) because the presence of the named individual defendants precluded venue in Maryland. Accordingly, the court should apply Virginia law because the transfer, based on improper venue, was validly made pursuant to Section 28 U.S.C. § 1406(a). In this situation, the transferee court must apply its own law. *See Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

As Virginia law governs the statute of limitations issue, the next question is the length of the Virginia statute of limitations for this action. The Virginia Supreme Court in a recent case, *Pigott v. Moran*, 231 Va. 76, 341 S.E.2d 179 (1986), held that the statute of limitations for fraud and constructive fraud is one year. *See* Va. Code § 8.01–248.

■ Finally, the court must determine when the cause of action for fraud accrued. Section 8.01–249, Va.Code, as amended, provides that a cause of action for fraud accrues when the fraud "is discovered or by the exercise of due diligence reasonably should have been discovered." The evidence indicates that after the original deal died in September, 1983, Gerard LaVay went by the Savannah Club project in April, 1984, to inquire into its status. At that time, he examined the land records and learned that there had been a loan made by Ben Franklin Savings and Loan regarding Waterwood Homes, and that Mr. William J. Dorn, acting as an agent, had

prepared the loan documents. He made copies of those records and had them examined in late fall of 1984. (Trial transcript, July 1, 1986, pp. 442, 443, 445). LaVay then hired his attorney to bring the law suit in May, 1984. (Trial transcript, July 1, 1986, p. 491). Viewing the evidence most favorably to LaVay, it would still appear that the LaVay Corporation was aware or by the exercise of due diligence could have discovered the constructive fraud in April or May of 1984. Since the suit was not filed until September 13, 1985, the Virginia one year statute of limitations bars this action.

Therefore, the court grants the Motion for Judgment Notwithstanding the Verdict as to the constructive fraud claim.

## B. *Breach of Fiduciary Duty*

■ Dominion also contends that the one year statute of limitations applies to bar the $750,000 punitive damage and $1,000 compensatory damage verdict in favor of LaVay. The jury found that a partnership agreement, which gave rise to fiduciary duties, was formed between LaVay and Dominion. Va.Code Section 8.01–246 provides that the statute of limitations shall be, " ... 3. In actions by a partner against another for settlement of the partnership account ... within five years from the cessation of the dealings in which they are interested together; 4. In actions upon any unwritten contract, express or implied, within three years." Whether the court applies a three or five year statute of limitations under this section, LaVay's action for bringing this suit is timely, and therefore, the court denies the Motion for Judgment Notwithstanding the Verdict or for a New Trial on the grounds that the statute of limitations bars the breach of fiduciary duty claim.

## C. *Damages*

■ Dominion also moved for a new trial on the ground that the jury award is excessive, contrary to law, and constitutes a miscarriage of justice. The determination of whether a jury verdict in a diversity case is excessive is left to state substantive law. *Quality Foods, Inc. v. U.S. Fire Insurance Co.,* 715 F.2d 539, 542 n. 2 (11th Cir.1983).[2] Hence, Virginia law applies in determining the propriety of the amount of punitive damages.

■ In Virginia, the standard for granting a new trial based on an excessive verdict is that a new trial may be granted if the amount awarded "is so great as to shock the conscience of the court and to create the impression that the jury has been motivated by passion, corruption or prejudice." *Rutherford v. Zearfoss,* 221 Va. 685, 272 S.E.2d 225 (1980). Moreover, although the amount to award the wronged party is a matter within the discretion of the jury, if the trial court concludes that a verdict is excessive, it also has the authority under Virginia Code Sections 8.01–383 and 8.01–383.1 (Repl. Vol. 1984) to require plaintiff to remit a portion of the award or to submit to a new trial. *See Sampson v. Sampson,* 221 Va. 896, 275 S.E.2d 597, 601 (1981); *Edmiston v. Kupsenel,* 205 Va. 198, 202, 135 S.E.2d 777, 780 (1964); *United Construction Workers v. Laburnum,* 194 Va. 872, 75 S.E.2d 694 (1953), *aff'd* 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954). If a new trial is ordered, it is within the trial court's discretion to grant a new trial on all issues or solely on the issue of damages. *Sampson v. Sampson, supra; Rutherford v. Zearfoss,* 221 Va. at 689–90, 272 S.E.2d at 228 (1980).

In determining excessiveness, some courts hold that a punitive damage award need not bear any reasonable relationship to the compensatory damages, while others, including Virginia, hold that punitive

**2.** *Cf. Donovan v. Penn Shipping Co., Inc.,* 429 U.S. 648, 649–50, 97 S.Ct. 835, 837, 51 L.Ed.2d 112 (1977) in which the Supreme Court noted that "the proper role of the trial and appellate courts in the federal system in reviewing the size of jury verdicts is ... a matter of federal law" and held that federal law prohibits a plaintiff who accepts a remittitur under protest from challenging it on appeal.

damages must be reasonably proportionate to the actual damages sustained. *See generally*, 22 AmJur.2d, Damages § 265 (1965); "Sufficiency of Showing of Actual Damages to Support an Award of Punitive Damages," 40 A.L.R. 4th 11 (1985). The Virginia Supreme Court in *Gazette, Inc. v. Harris*, 229 Va. 1, 325 S.E.2d 713, 747 (1985), *cert. denied sub nom, Fleming v. Moore*, — U.S. —, 105 S.Ct. 3513, 87 L.Ed.2d 643 (1985), held:

> The amount of punitive damages awarded should bear some reasonable relationship to actual damages sustained and to the measure of punishment required; otherwise an award on its face indicates prejudice or partiality.

Where a punitive award is substantially in excess of what ordinarily might be expected as punishment, the trial court has a duty to annul the award unless the circumstances are so egregious as to merit the award. *Id.*, 325 S.E.2d at 746.

Here, the ratio 750 to 1 appears to be out of balance.[3] In contrast to this award, courts have found a reasonable relationship between punitive and compensatory damages in an action for breach of a broker's common-law fiduciary duty where the ratio was two to one. *Miley v. Oppenheimer & Co.*, 637 F.2d 318 (5th Cir.1981), *reh. denied*, 642 F.2d 1210 (5th Cir.) (Jury awarded $54,000 in compensatory and $100,000 in punitive damages). The court noted that four factors are considered by Texas courts: 1) degree of outrage produced by the evil, 2) frequency of the evil, 3) size of award needed to deter similar wrongs in the future, and 4) ratio between exemplary and actual damages. *See also, Morrill v. Becton, Dickinson and Co.*, 747 F.2d 1217 (8th Cir.1984) (In breach of contract and fraud action where compensatory damages

against Becton were $2,125,000, court ordered remittitur of punitive damage award from $20,000,000 to $3,000,000 finding the original verdict excessive but not "shocking").

In the case at bar the court feels that 750 to 1 ratio is out of balance considering the above factors, and that an award of 250 to 1 would be more appropriate. The verdict does not shock the conscience of the court: the defendant is a large savings and loan association engaged in a multi-million dollar transaction. A new trial is thus not appropriate if the punitive damage award is reduced to a reasonable amount. Under Rule 59, Fed.R.Civ.P., and Va.Code § 8.01–383, *et seq.*, the court may order a remittitur. *See* 11 Wright & Miller, *Federal Practice and Procedure*, § 2807 at 51–52. Therefore, the court will reduce the punitive damage award from $750,000 to $250,000 and require the plaintiffs to accept the remittitur or submit to a new trial on compensatory and punitive damages.

An appropriate Order shall issue.

## ORDER

In accordance with the accompanying Memorandum Opinion, it is accordingly

ORDERED:

(1) that the defendant Dominion Federal Savings and Loan Association is GRANTED a Judgment Notwithstanding the Verdict as to plaintiffs' Judgment in the amount of $80,000 for constructive fraud. Plaintiffs' Complaint for constructive fraud is DISMISSED with prejudice.

(2) that the defendant Dominion Federal Savings and Loan Association's Motion for Judgment N.O.V. or for a New Trial as to breach of fiduciary duty is DENIED. De-

---

**3.** Other jurisdictions have used ratios in determining punitive damages and compensatory damages. *See Aspinwall v. Gowens*, 405 So.2d 134 (Ala.1981) (The jury awarded $1 million to the insured party against the insurer following its failure to pay a claim slightly over $2,000 under a medical policy). The Alabama Supreme Court ordered a remittitur of $750,000. *See also, Wetherbee v. United Insurance Co.*, 18 Cal.App.3d 266, 95 Cal.Rptr. 678 (1971) ($200,000 punitive damages against insurer for failure to pay benefits held not to be excessive, although actual damages were only $1,050). This court in *LaRouche v. National Broadcasting Co.*, 12 Media Law Reporter 1585, 19 Fed.R.Evid.Serv. 990 (E.D. Va.1985), *aff'd on other grounds*, 780 F.2d 1134 (4th Cir.1986), reduced the $3 million punitive damage award to $200,000 where the compensatory damages were $2,000.

**618**

fendant Dominion Federal Savings and Loan Association is GRANTED a remittitur on the breach of fiduciary duty verdict. Judgment is ENTERED in favor of plaintiff The LaVay Corporation and against the defendant Dominion Federal Savings and Loan Association in the amount of $1,000 compensatory damages and $250,000 punitive damages, plus costs and interest for breach of fiduciary duty.

(3) that the plaintiff shall have until October 15, 1986, to advise the court as to whether or not they wish to accept the remittitur or a new trial on compensatory and punitive damages for breach of fiduciary duty. Should the plaintiff elect to have a new trial, then counsel shall appear in this court on October 17, 1986, at 10:00 a.m. for the purpose of setting a new trial date.